**SUPERIOR COURT**
OF THE
**STATE OF DELAWARE**

ABIGAIL M. LEGROW
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
TELEPHONE (302) 255-0669

February 28, 2017

Gary W. Aber, Esquire
Gary W. Aber, P.A.
704 King Street, Suite 600
P.O. Box 1675
Wilmington, DE 19801

James D. Taylor, Jr., Esquire
Gerard M. Clodomir, Esquire
Saul Ewing LLP
1201 N. Market Street, Suite 2300
Wilmington, DE 19801

RE: **Al-Sameen T. Khan, Ph.D. v. Delaware State University**
**C.A. No.: N14C-05-148 AML**_____

Dear Counsel:

This dispute, scheduled for trial in April, has been simmering for three years. After initially bringing his claims in arbitration, the plaintiff, Al-Sameen T. Khan, Ph.D. ("Dr. Khan), filed this action against his former employer, Defendant Delaware State University ("DSU"), and the dean of the college in which he worked, Defendant Noureddine Melikechi ("Dean Melikechi," collectively with DSU, "Defendants"). Among other things, Dr. Khan claimed his suspension and discharge violated a collective bargaining agreement between DSU and its professors. DSU filed a counterclaim alleging Dr. Khan acted in bad-faith by withdrawing from arbitration.

In September 2015, Dr. Khan moved for summary judgment as to his breach of contract claims and DSU's bad-faith counterclaim, and DSU filed a summary judgment motion as to Dr. Khan's age discrimination and tortious interference claims. On June 24, 2016, this Court issued a decision: (1) granting Dr. Khan's motion as to DSU's counterclaim, (2) denying summary judgment as to all other counts, and (3) calling for supplemental briefing to address whether a crucial term in the agreement is ambiguous (the "June Decision").[1] I now turn to that question: is the term "professional responsibilities" ambiguous as it is used in the collective bargaining agreement?

**Background**

The factual background of this dispute is discussed extensively in the June Decision.[2] To briefly summarize, Dr. Khan was a tenured professor in the College of Mathematics, Natural Sciences & Technology ("CMNST") at DSU. Dr. Khan's employment as a professor was governed by a collective bargaining agreement (the "CBA").[3] In addition to a faculty position, Dr. Khan also was the CMNST Director of IT, which was a supplemental paid position. After a dispute with Dean Melikechi, who was the dean of CMNST, Dr. Khan resigned from his role as IT

---

[1] *Khan v. Del. State Univ.*, 2016 WL 3575524 (Del. Super. June 24, 2016).
[2] *Id.* at *1-8.
[3] The CBA was negotiated between the DSU Board of Trustees and the DSU chapter of the American Association of University Professors.

Director on March 12, 2012. On March 16, 2012, the IP network Dr. Khan developed for CMNST crashed. Shortly thereafter, DSU suspended and ultimately discharged Dr. Khan from his faculty position. As the basis for Dr. Khan's discharge, DSU asserted Dr. Khan refused to carry out reasonable assignments that contributed substantially to the network crash and failed to respond to reasonable requests to provide information to restore the network.

The parties agree that as a tenured professor Dr. Khan only could be discharged under the terms of the CBA. DSU takes the position that Dr. Khan was discharged under two sections of the CBA: (i) Section 10.4.3(A), which permits discharge proceedings for the "[f]ailure to perform professional responsibilities either through incompetence, persistent negligence, refusal to carry out reasonable assignments, or disregard for or failure to meet scholarly and professional standards and ethics[,]" and (ii) Section 10.4.3(E), which authorizes discharge for "[s]erious personal misconduct of such a nature as to warrant and evoke the condemnation of the academic community."

In September 2015, Dr. Khan moved for summary judgment as to his breach of contract claims and DSU's bad-faith counterclaim. Dr. Khan argued he was entitled to summary judgment on his contract claims because, under the CBA, DSU lacked just cause to terminate him since the charges brought against him did not relate to his performance of "professional responsibilities" as that term is used

in the CBA. In that motion, Dr. Khan contended the term "professional responsibilities" meant "Academic Load," a term defined elsewhere in the CBA. DSU did not squarely address that argument in its briefs, but appeared to contend that "professional responsibilities" should be interpreted more broadly than "Academic Load."[4]

Through briefing and oral argument, it became apparent to the Court that the parties disagreed over the meaning of the term "professional responsibilities," but it remained unclear "whether the parties contend[ed] the use of the term 'professional responsibilities' in the CBA is ambiguous."[5] Accordingly, in the June Decision, the Court called for simultaneous supplemental briefing on the narrow issue of whether "professional responsibilities" is an ambiguous term. The parties submitted such briefing, and additional oral argument was held on November 30, 2016.

**The Parties' Contentions**

In the supplemental briefing, Dr. Khan abandoned his contention that "professional responsibilities" is synonymous with "Academic Load," and now contends that the CBA unambiguously defines the term "professional

---

[4] *Khan v. Del. State Univ.*, 2016 WL 3575524, at *9 ("Plaintiff strongly contends that the term 'professional responsibilities' means 'Academic Load,' and . . . . [a]lthough the issue is not expressly addressed in its briefs, DSU appears to contend that 'professional responsibilities' should be interpreted more broadly than 'Academic Load.'")

[5] *Id.*

responsibilities" in Section 12.3. Section 12.3, titled "Faculty Responsibilities and

Obligations," states:

> [T]he Association and the University agree that accepting and assuming a faculty position at Delaware State University *entails the following professional responsibilities and obligations*:
>
> A. To demonstrate and maintain professional competence and knowledge of subject matter and strive to keep informed of contemporary developments in the field of specialization through reading and research, or other means of expression appropriate to the discipline.
> B. To meet each class as scheduled.
> C. To aspire to excellence in teaching by conducting each class according to the highest professional standards.
> D. To distribute policies concerning attendance, course requirements, and criteria for grading to each student at the beginning of each semester.
> E. To represent to students during the term and within a reasonable time evaluations of their academic performance and progress in the class.
> F. To be available to students on a regular basis for advising and counseling on matters regarding their academic performance and progress in class.
> G. To treat all students fairly, impartially, and with understanding.
> H. To improve, update, enrich, and revise courses periodically to keep them current.
> I. To maintain adherence to course descriptions in accordance with the syllabus and the University Catalog.
> J. To be available on a regular basis to students who have been identified as advisees on matters pertaining to the students' program of study.

> K. To accept willingly a fair share of Departmental and University duties.
>
> L. To accept willingly a fair share of committee assignments and to serve conscientiously as a member of committees appointed or elected to and fulfill the specific duties of any chair or office accepted.
>
> M. To adhere to deadlines and schedules established for the timely reporting of grades and for other matters related to student registration and record-keeping.[6]

Dr. Khan asserts that the items enumerated in Section 12.3 completely encompass the "professional responsibilities" of a tenured faculty member.[7] Dr. Khan argues that, under the principle of *expressio unius est exclusio alterius*, the enumeration of this list, without any statement that other professional responsibilities are assumed as a result of accepting a faculty position at DSU, leads to the inference that any professional responsibilities other than those listed are excluded.[8] Dr. Khan contends the Court must give effect to the specific list chosen and bargained for by the parties, which the parties were unwilling to leave for later interpretation.[9]

In response, Defendants continue to dodge any attempt to define "professional responsibilities," arguing instead that: "The CBA does not limit discipline to 'academic responsibilities' or to 'those duties defined and described in

---

[6] CBA § 12.3 (emphasis added).
[7] Pl.'s Answering Br. 5.
[8] *Id.* at 6.
[9] *Id.*

the CBA.'"[10]   According to Defendants, the term "professional responsibilities" is "broad" and "undefined."[11]   Defendants contend the CBA "uses the intentionally broad phrase 'professional responsibilities' to capture the full plethora of obligations that a faculty member owes to the institution, regardless of their source."[12]   According to Defendants, "the task of articulating a comprehensive definition of this term is daunting and it is not surprising that the parties left the application of [the] term to the future, when the context would be a helpful guide."[13]   In other words, DSU argues, the term is "broadly written and undefined for a reason – precisely so that the parties did not have to anticipate every scenario where a faculty member owed a responsibility to his or her institution."[14]

Defendants therefore contend the term is ambiguous and will need to be defined by the jury through testimony and parol evidence.[15]   Defendants argue they will demonstrate at trial that the term encompasses all of the obligations Dr. Khan owed to DSU, including that on which his termination was based.[16]   Defendants point to a witness's deposition testimony to support the argument that the term

---

[10] Defs.' Opening Suppl. Br. Opp. Pl.'s Mot. Summ. J. Br. 6.
[11] *Id.* at 5, 7; Defs.' Reply Br. 5.
[12] Defs.' Opening Suppl. Br. Opp. Pl.'s Mot. Summ. J. Br. 6.
[13] *Id.* at 7.
[14] Defs.' Reply Br. 6.
[15] Defs.' Opening Suppl. Br. Opp. Pl.'s Mot. Summ. J. Br. 2.
[16] *Id.* at 7.

"professional responsibilities" has a broader meaning than Dr. Khan's proffered definition.[17]

Finally, Defendants argue that, no matter how the term "professional responsibilities" is defined, material factual disputes remain regarding Dr. Khan's conduct before his discharge, and these disputes preclude summary judgment. Defendants aver that the question of whether Dr. Khan's conduct amounted to a failure to perform his professional responsibilities is a question for the jury.[18]

## Analysis

The proper construction of a contract, such as a collective bargaining agreement, is a question of law for the Court.[19] When interpreting a contract, the Court gives priority to the parties' intentions as reflected in the four corners of the contract.[20] In upholding the parties' intentions, the Court must construe the contract "as a whole, giving effect to all provisions therein."[21] Clear and

---

[17] *Id*. at 6. Defendants acknowledge, however, that the Court must determine whether ambiguity exists based solely on the contract and only may consider parol evidence if the Court first concludes the contract is ambiguous.

[18] Defs.'s Resp. Br. 6.

[19] *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992).

[20] *Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 145 (Del. 2009) (citing *E.I. du Pont de Nemours & Co. v. Shell Oil Co.*, 498 A.2d 1108, 1114 (Del. 1985) (citing *Radio Corp. of Am. v. Phila. Storage Battery Co.*, 6 A.2d 329 (Del. 1939)); *Nw. Nat'l Ins. Co. v. Esmark, Inc.*, 672 A.2d 41, 43 (Del. 1996)).

[21] *GMG Capital Invs. v. Athenian Venture P'rs I, L.P.*, 36 A.3d 776, 779 (Del. 2012) (citing *E.I. du Pont de Nemours & Co.*, 498 A.2d at 1113).

unambiguous language will be given its ordinary meaning.[22]   A contract is ambiguous when a provision is susceptible to more than one interpretation,[23] and not "simply because the parties do not agree upon its proper construction."[24]   If the contract is ambiguous, "the resolution of the ambiguity becomes a trial issue for the jury,"[25] which may consider extrinsic evidence to construe the contract or determine the parties' intent.[26]

## A. The CBA is not ambiguous.

Dr. Khan contends his contractual "professional responsibilities" are limited to the list of responsibilities contained in Section 12.3 of the CBA.  Defendants argue "professional responsibilities" include every duty reasonably assigned to a faculty member.  The initial question before me is whether the term "professional responsibilities" fairly is susceptible to two different interpretations.  I agree with Dr. Khan that it is not.

---

[22] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159-60 (Del. 2010) (citing *Rhone-Poulenc Basic Chems. Co.*, 616 A.2d at 1195); *GMG Capital Investments v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 780 (Del. 2012).

[23] *GMG Capital Invs.*, 36 A.3d at 780 (citing *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997) (An ambiguity exists where "the provisions in controversy are fairly susceptible of different interpretations or may have two or more different meanings.")).

[24] *GMG Capital Invs.*, 36 A.3d at 780 (quoting *Rhone-Poulenc Basic Chems. Co.*, 616 A.2d at 1196).

[25] *GMG Capital Invs.*, 36 A.3d 776, 783 (citing *Eagle Indus., Inc.*, 702 A.2d at 1232; Lawrence M. Solan, *Pernicious Ambiguity in Contracts & Statutes*, 79 Chi-Kent L.Rev. 859, 862 (2004); *United Rentals, Inc. v. RAM Hldgs., Inc.*, 937 A.2d 810, 841-42 (Del. Ch. 2007)).

[26] *Norton v. K-Sea Transp. P'rs L.P.*, 67 A.3d 354, 360 (Del. 2013).

In my view, which DSU does not dispute directly, Dr. Khan's interpretation of the term is reasonable. First, the structure of the CBA supports the conclusion that "professional responsibilities" is a defined term. Before disciplining a tenured faculty member, Section 10.4.2 requires there be substantiated charges directly and substantially related to the fitness of the faculty member to perform professional responsibilities. Similarly, Section 10.4.3(A) states that discharge proceedings may be instituted for the "[f]ailure to perform professional responsibilities either through incompetence, persistent negligence, refusal to carry out reasonable assignments, or disregard for or failure to meet scholarly and professional standards and ethics." It is reasonable to conclude the parties would have negotiated a list of responsibilities for which one could be disciplined and ultimately discharged. Section 12.3 provides just such a list.

In contrast, the definition (or, more accurately, the contention that there is no definition) offered by Defendants is not a reasonable interpretation of the CBA. Defendants seek to avoid the plain language of Section 12.3 by arguing it merely lists examples of professional responsibilities, but is not an exhaustive list. Even if the Court were to ignore the plain and unambiguous reading of Section 12.3, which is devoid of any language to suggest an exemplary rather than exhaustive list of terms, the other provisions of the contract make Defendants' interpretation untenable. When interpreting contracts, this Court construes the contract as a

whole,[27] "gives meaning to every word in the agreement[,] and avoids interpretations that would result in 'superfluous verbiage.'"[28] If the parties intended Section 12.3 to be exemplary, one would expect to find language similar to what is found in Section 12.3.2, which states: "The Association and the University agree that accepting and assuming the responsibility of a Department *includes but is not necessarily limited to* the following professional responsibilities and obligations[.]"[29] The use of "including but not limited to" language is a tool commonly employed by contract drafters to avoid the application of the *expressio unius est exclusio alterius* rule. Not only was the phrase not used in Section 12.3, it was employed by the drafters for other, similar lists, including lists of the professional responsibilities of non-faculty members covered by the CBA. If that exemplary language were to be read into Section 12.3, as Defendants suggest, then the language that is present in other sections of the CBA would be rendered "superfluous verbiage," a result this Court aims to avoid.

Furthermore, Defendants' interpretation of "professional responsibilities" is unreasonably broad, swallowing every conceivable duty a faculty member could or should owe to DSU. That breadth and uncertainty is not consistent with the CBA's

---

[27] *GMG Capital Invs.*, 36 A.3d at 779 (citing *E.I. du Pont de Nemours & Co.,* 498 A.2d at 1113).
[28] *Seidensticker v. Gasparilla Inn, Inc.*, 2007 WL 4054473, at *3 (Del. Ch. Nov. 8, 2007) (citing *NAMA Hldgs., LLC v. World Mkt. Ctr. Venture*, LLC, 2007 WL 2088851, at*6 (Del. Ch. July 20, 2007)).
[29] CBA § 12.3.2 (emphasis added); *see also* CBA § 10.5.6(9)(C): "Other specific measures taken may include, but not be limited to, each of the following . . . ."

purpose or the principles of tenure as a whole. It is unreasonable to conclude that those negotiating the contract on the faculty members' behalf would have left to future "contextual" interpretation the scope of the responsibilities for which they could be subjected to discipline. Accordingly, DSU has not shown the term "professional responsibilities," as it is used in the CBA, is susceptible to two different meanings.

**B. Dr. Khan's Motion for Summary Judgment is denied.**

Although the Court finds no ambiguity in the contested provision and agrees with Dr. Khan's reading of Section 12.3, summary judgment as to Dr. Khan's contract claims is not appropriate. A factual question remains as to whether DSU's evidence amounts to a failure by Dr. Khan to perform his professional responsibilities as defined in Section 12.3. For example, a jury reasonably might conclude Dr. Khan's conduct in response to requests by DSU, including the Provost of the University, was a failure "[t]o accept willingly a fair share of Departmental and University duties,"[30] or was "serious personal misconduct" under Section 10.4.3(E). That question likely will turn on an evaluation of the testimony and credibility of the witnesses, which is not this Court's function on a motion for summary judgment.

---

[30] CBA § 12.3(K); *see* CBA § 10.4.3(A): "Failure to perform professional responsibilities . . . ."

## Conclusion

For the foregoing reasons, Dr. Khan's Motion for Summary Judgment as to

Counts I and II is **DENIED**.  **IT IS SO ORDERED.**

Very truly yours,

*/s/  Abigail M. LeGrow*
Abigail M. LeGrow, Judge

Original to Prothonotary